# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **MARC HEFLIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **Civil Action, Case No.: 4:23-cv-01726** |
| **v.** | ) |
| | ) **JURY DEMANDED** |
| **PROOFPOINT, INC., a Delaware** | ) |
| **Corporation,** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

**Address for Service on Defendant:**

CSC-LAWYERS INCORPORATING
SERVICE COMPANY
221 BOLIVAR STREET
JEFFERSON CITY MO 65101

---

## VERIFIED COMPLAINT FOR VIOLATION OF THE
## AMERICANS WITH DISABILITIES ACT

---

**COMES NOW** Plaintiff Marc Heflin (hereinafter referred to as "Mr. Heflin" or "Plaintiff"), by and through counsel, and for his Complaint against Defendant Proofpoint, (hereinafter "Proofpoint" or "Defendant") states as follows:

### NATURE OF THE COMPLAINT

1.      Mr. Heflin brings a cause of action under federal law, specifically, the Americans with Disabilities Act, 42 U.S.C. § 12101 (the 'ADA;).

2.      Mr. Heflin is a former employee of Proofpoint and alleges that Proofpoint violated the

ADA with respect to his employment at Proofpoint when Proofpoint:

- failed to offer reasonable accommodations for his disabilities following Mr. Heflin's accommodations request between February 2020 and April 2022 (Count I),

- failed to offer reasonable accommodations for his disabilities following Mr. Heflin's accommodations request in November 2022 (Count II);

- failed to accommodate Mr. Heflin's disabilities by transferring him to any one of the alternative more accommodating open positions he applied for, and was qualified for, at Proofpoint (Count III);

- subjected Mr. Heflin to disparate treatment for having engaged in protected conduct pursuant to the ADA in seeking ADA-related accommodations, by actively interfering with one or more job applications he submitted for alternative positions(s) within Proofpoint (Count IV);

- subjected Mr. Heflin to disparate treatment for having engaged in protected conduct pursuant to the ADA in seeking ADA-related accommodations by demanding that Mr. Heflin withdraw his application for an alternate, more accommodating, job at Proofpoint that he was on the verge of being offered (Count V);

- subjected Mr. Heflin to disparate treatment for having engaged in protected conduct pursuant to the ADA in seeking ADA-related accommodations by rejecting Mr. Heflin's multiple job applications for other open positions at Proofpoint which he was qualified for (VI);

- retaliated against Mr. Heflin, in violation of the ADA, for seeking reasonable accommodations pursuant to the ADA (Count VII);

- retaliated against Mr. Heflin for filing a charge of discrimination with the EEOC in February, 2020 (Count VIII); and

-  retaliated against Mr. Heflin for filing a charge of discrimination with the EEOC in February, 2020 (Count IX).

3.    At all relevant times, Defendant was an "employer," as defined under the ADA, 42 U.S.C. § 12111(5).

4.    At all relevant times, Defendant has employed and/or continues to employ "employee[s]," such as Mr. Heflin.

5.    At all relevant times, Mr. Heflin was an eligible "employee" as defined under the ADA, 42 U.S.C. § 12111(4).

6.    As required under the ADA, Mr. Heflin brings this Complaint within 90-days of receipt of the EEOC's right to sue letters, issued on September 29, 2023, in regard to Mr. Heflin's EEOC charges related to Proofpoint, Charge No. 556-2022-00381 filed 2/17/22 (hereinafter sometimes referred to as the '381 Charge'), Charge No. 560-2022-01541 filed 5/11/22 (hereinafter sometimes referred to as the '541 Charge'), and Charge No. 556-2022-00859 filed 1/26/23 (hereinafter sometimes referred to as the '859 Charge').

## PARTIES

7.    Mr. Heflin is a citizen of the United States and of the state of Missouri, currently domiciled in St. Louis County, Missouri.

8.    Mr. Heflin is an individual with disabilities as defined by the ADA.

9.    Proofpoint is and was at all relevant times a corporation organized under the laws of Delaware with its principal place of business at 925 W. Maude Ave., Sunnyvale, CA 94085-2802.

10.    Proofpoint may be served through its Registered Agent in Missouri, CSC-Lawyers Incorporating Service Company, located at 221 Bolivar Street, Jefferson City, Missouri, 65101.

**JURISDICTION AND VENUE**

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the claim arises under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. Additionally, jurisdiction is proper under 28 U.S.C. § 1343(a)(3) for claims asserting the deprivation of rights secured by federal law.

12.     This cause of action is related to and stems from Defendant's contacts with Missouri, within the Eastern District of Missouri, Eastern Division.

13.     This court has specific personal jurisdiction over Proofpoint as this lawsuit arises from Defendant's contacts within the Eastern District of Missouri, Eastern Division.

14.     Venue for this action properly lies in the Eastern District of Missouri, Eastern Division court. pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this jurisdiction.

**ADMINISTRATIVE PROCEDURES**

15.     On February 17, 2022 Plaintiff timely filed his initial charge of discrimination against Proofpoint with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. Additional charges of discrimination against Proofpoint were later filed with the EEOC, on May 11, 2022 and January 26, 2023. On September 29, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue with respect all three filings.

16.     The aforesaid Charges of Discrimination provided the EEOC sufficient opportunity to investigate the full scope and controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

17.     Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

18.     This lawsuit is filed within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue.

19.     This action is filed within the applicable statute of limitations.

## FACTUAL BACKGROUND

20.     Mr. Heflin began working for Proofpoint in October 2019 as a Senior Sales Engineer to support Proofpoint's Major Markets Division ("Major Markets"), which then had over 50,000 user accounts ('Major Markets'). Initially, Mr. Heflin worked for Defendant in the Chicago-area, but later moved, in July 2020, to the St. Louis-area, after he had been transferred, in February 2020, to Proofpoint's Mid-Markets division.

21.     When Mr. Heflin was working for Defendant in Major Markets in the Chicago-area he worked remote from his home and did not request or require any accommodation from Defendant due to his disabilities as his job then required minimal local travel within walking distance from his home and only air-travel on one occasion.

22.     In December 2019, two-months after beginning work at Proofpoint, an account manager brought up concerns about how often Mr. Heflin used the restroom. To explain that, Mr. Heflin then felt it was necessary to disclose one of his disabilities to his then boss, Mr. Craig Huitema, Proofpoint's Director of Sales Engineering in Major Markets, and did so, by informing Mr. Huitema that his frequent restroom-use was due to his irritable Bowel Syndrome (IBS) condition which caused frequent diarrhea.

23.     On January 2020, shortly after disclosing his IBS disability to Mr. Huitema, Mr. Heflin was informed that he was being transferred, effective immediately, to support Proofpoint's 'Mid

Markets Division ('Mid Markets") as a Sales Engineer.

24.     After learning of his planned job-transfer to Mid Markets, Mr. Heflin spoke to Nate Chessin, Proofpoint's V.P. of Sales Engineering in Major Markets (whom Craig Huitema then reported to) of his concerns concerning the transfer to the new role as it required significant out-of-town travel, which would directly conflict with his being able to perform the role given his IBS condition, unlike his prior job in Major Markets. This conversation occurred in person, in mid-January, 2020, at Proofpoint's annual 'SKO' (Sales Kick-Off) meeting in Utah. In response, Mr. Chessin informed Mr. Heflin that the company could move him as needed.  He also then told Mr. Heflin to 'work it out' with Sergio [Nesti]', the Director of Sales Engineering.

25.     Thereafter, after January 15, 2020, but prior to February 15, 2020, Mr. Heflin spoke to Sergio Nesti, by phone, in an effort to have his now-needed accommodations addressed, without success.

26.     On February 5, 2020 Mr. Heflin began applying for other positions within Proofpoint due to his concerns about Proofpoint not offering the accommodations that were needed in his new Mid-Markets job.

27.     On February 5, 2020 Mr. Heflin applied for the "Internal: Sales Engineering Manager - Named Accounts - California' position.  His application was later rejected by Sergio Nesti, the then Director of Sales Engineering who Mr. Heflin reported to at the time.

28.     On or about February 15th, 2020 Mr. Heflin reached out to Julie Azzarello in HR by email, in an effort to talk to someone about accommodations for his disability.. informing her then that he had "been  trying to work [with] my management but every suggestion I have made has been rejected."

29.     Thereafter, Ms. Azzarello emailed Mr. Heflin a Disability Status Questionnaire to have his provider fill out.  That form., was completed and returned to Ms. Azzarello and reads in part:

### DISABILITY STATUS QUESTIONNAIRE

1.      Does Marc Heflin have a physical or mental impairment that limits one or more major life activities?

        ☒ Yes            ☐ No

1.a.    If you answered "Yes," please identify each major life activity that is limited by the impairment.

① Chronic back pain and chronic knee pain limit patient's ability to sit for extended periods such as long flights or long periods of driving.
② Patient's IBS symptoms make it difficult to plan client meetings as has unpredictable need to use restroom

1.b.    Is the impairment is temporary or permanent?

        ☒ Permanent      ☐ Temporary

1.c.    Please explain the basis for the conclusion provided above.

① Previous injury to left knee resulted in surgery and chronic left knee pain ② Pt had C5,6,7 fusion, has had chronic back/neck pain since
③ IBS is often an ongoing, chronic issue.

1.d.    If the impairment is "Temporary," when do you reasonably predict that the impairment will no longer limit a major life activity?

NA.

30.     In early April 2000 Mr. Heflin reached out to Ms. Azzarello requesting more information about his prior 'Strategic Sales Engineer – Major Markets' job at Proofpoint after learning it was then open, suggesting it would make sense to be put him back into his old position (due to the accommodations now required by his Mid Markets job).  In response, Ms. Azzarello told Mr. Heflin that he would have to apply for his old job and that Proofpoint was not obligated to move him back to his prior position.

31.     Later, Mr. Heflin did apply for the Strategic Sales Engineer – Major Markets position at Proofpoint, his prior job. After doing so he was told (by the then current manager of the Major

Markets accounts, Chris Richmond, during a Zoom meeting) that he would not "be a good fit" because he had previously been moved from the position. During this same time-frame, on multiple occasions, Ms. Azzarello also informed Mr. Heflin that Proofpoint was under no obligation to transfer him to another position to better accommodate his disability, even though he also had informed her that his current position was making his disability worse.

32.     On April 17, 2020 Ms. Azzarello sent Mr. Heflin a letter regarding his requested accommodations, which reads, in part:

> "We received the completed Questionnaire on March 4, 2020 and reviewed it with you on March 10, 2020. Based on the essential functions of your job, which include travel to customer sites in the Central Mid-Market region, we agreed that when travel is required, you may drive by car to your meetings instead of flying by plane, provided you can make it to your meetings on time. If air travel is required, you can reserve an aisle seat so that you can get up and stretch frequently during your flights. In addition, your manager will work with you to be flexible when scheduling meeting times and locations. …. If your circumstances change and/or you believe the accommodations are not effective, please let your manager and I know.

33.     After receipt of the April 17, 2020 letter from Ms. Azzarello, Mr. Heflin had a follow up call with Ms. Azzarello at which time he questioned the adequacy of the offered accommodations. In response, Mr. Heflin was then told by Ms. Azzarello that Proofpoint had no obligation to have further discussions and that he would need to switch to another position if he needed different accommodations than the ones offered to him.

34.     Although Ms. Azzarello's April 17, 2020 letter purported to offer the accommodation that '*[i]f air travel is required, you can reserve an aisle seat so that you can get up and stretch frequently during your flights*', in fact, that accommodation was never effectively offered by Proofpoint as Proofpoint later refused to reimburse Mr. Heflin for any added ticket-cost to obtain an aisle seat on flights.

35.     Between April 24, 2020 and April 9, 2022 Mr. Heflin applied for multiple job openings

at Proofpoint in an effort to find a position within Proofpoint to better accommodate his disabilities (the 'Job Applications') without success, as detailed below:

| Application No.(for reference only) | Date Applied | Position Title | Result |
|---|---|---|---|
| 1 | 4/24/2020 | Internal: Senior Sales | Rejected |
| 2 | 10/9/2020 | Internal: Director | Rejected |
| 3 | 10/23/2020 | Internal: Sr. Software | Rejected |
| 4 | 10/23/2020 | Internal: Director | Rejected |
| 5 | 11/4/2020 | Internal: Manager | Rejected |
| 6 | 11/10/2020 | Internal: Sr. Software | Rejected |
| 7 | 11/10/2020 | Internal: Director | Rejected |
| 8 | 11/19/2020 | Internal: Sales Engineering | Rejected |
| 9 | 12/14/2020 | Internal: Sr. Technical | Rejected |
| 10 | 1/ 12/2021 | Senior Sales Engineering – Major Markets | Rejected |
| 11 | 2/3/2021 | Internal: Technical Project | Rejected |
| 12 | 2/3/2021 | Internal: Senior Sales | Rejected |

| 13 | 2/24/2021 | Internal: Senior :Program | Rejected |
| 14 | 3/2/2021 | Internal: Service Delivery | Rejected |
| 15 | 4/5/2021 | Internal: Manager Sales | Rejected |
| 16 | 6/25/2021 | Internal: Resident CISO | Rejected |
| 17 | 7/8/2021 | Internal: Sales Channel | Rejected |
| 18 | 1/10/2022 | Internal: Senior Channel Engineer | Imminent job offer; Application withdrawn upon demand of Richard Gillies. |
| 19 | 2/24/2022 | Internal: Senior Engineering Manager | Application withdrawn upon demand of Richard Gillies |
| 20 | 4/9/2022 | Internal: Senior Channel | Rejected |

36.     Mr. Heflin filed his initial Charge of Discrimination with the EEOC regarding Proofpoint on February 12, 2022, as Charge No. 556-2022-00381 (the '381 Charge').

37.     Before filing the 381 Charge, Mr. Heflin had come to learn that Richard Gillies of Proofpoint had actively interfered with Mr. Heflin being offered the "Internal: Senior Channel Engineer" position (referenced above as Application No. 18) at Proofpoint, by contacting the hiring manager for position earlier that month, even though Mr. Heflin was well qualified for the role and was then, he was told, about to be offered the position.

38.     Before filing the 381 Charge, Mr. Gillies of Proofpoint also actively interfered with Mr. Heflin's ability to secure the Senior Channel Engineer and the Senior Engineering Manager positions at Proofpoint, per his prior applications (referenced above as Application No. 18 and Application No. 19), by demanding that Mr. Heflin withdraw his application for both positions, which he then felt compelled to do to avoid the risk of otherwise losing his job, and then actually did

39.     On Feb 11,2022 Mr. Heflin sent an email to Ron Poserina at Proofpoint, regarding Mr. Gillies demand relating to his Senior Channel job application, stating, in part:

> "I recently applied for a channel SE position and wanted to bring up a negative experience I had during the process.  Channel was going to offer until Richard Gillies inserted himself and said something unsettling to the hiring manager. ….I have been looking to move to channel for quite some time as it fits better with my disability …Now I have to start looking outside of Proofpoint …"

40.     On February 12, 2022 Mr. Heflin sent a second email to Ron Poserina at Proofpoint, regarding Mr. Gillies demand relating to his Senior Channel job application, stating, in part:

Ron,

To add some context to the conversation and why I've been applying for jobs.

As I told HR on 2/5/2021, the MM [Mid Markets] isn't the best position for me with my disability and that I would be pursuing positions that would be a better fit for me. I brought up concerns as soon as I was moved about the job and my disability.

That is why I am concerned and baffled about being told that my reputation is being tainted for applying to other jobs. HR is aware I have a disability because it's on file; HR is aware the current accommodations are not working, as I have mentioned before. HR is also aware I'm applying to jobs I'm qualified to do and that I think would meet my accommodations as we have discussed previously.

I am filing a complaint with the EEOC to help resolve this issue since it has hurt my reputation at Proofpoint for asserting my rights as a protected class.

Thank you for letting me add some further context to the situation.

41.     After filing the 381 Charge with the EEOC, Mr. Heflin continued to request reasonable accommodations that would allow him to remain in his Mid-Markets role at Proofpoint even with his disabilities, including in April, 2022 ("April 2022 Accommodation Requests). This request was denied by Proofpoint on or about April 25, 2022, without Proofpoint engaging in any interactive process with Mr. Heflin regarding his request.

42.     On April 29, 2022 Mr. Heflin resumed his efforts to engage in an interactive process with Proofpoint with regard to his needed accommodations, pursuant to his prior April 2022 Accommodation Requests, primarily through communications with Devin Smith, the 'Senior Manager of People Relations' at Proofpoint, beginning with a phone discussion with Devin Smith on that date.

43.     On May 11, 2022 Mr. Heflin filed Charge No. 560-2022-01541 (the '541 Charge') with the EEOC due to Proofpoint's  conduct related to the April 2022 Accommodation Requests and due to Proofpoint's retaliation for filing his prior 381 Charge.

44.     Between May 11, 2022 and November 1, 2022 Mr. Heflin continued to attempt to communicate with Proofpoint regarding his needed accommodations, pursuant to his prior April 2022 Accommodation Request, without benefit.  Initially, Proofpoint's representative, Devin Smith, focused his follow up on only one request Mr. Heflin had made – regarding being allowed to work from Portland, OR – rather than his needed accommodations as a whole. Later, he stopped communicating with Mr. Heflin about his accommodation needs altogether.

45.     At no time did Proofpont, through Devin Smith or otherwise, enter into a good-faith interactive process with Mr. Heflin regarding the April 2022 accommodation Requests.

46.     On August 17, 2023 Devin Smith advised Mr. Heflin in writing that Proofpoint would not be continuing any communication with him, directly, regarding his requested

accommodations, stating:

> "It is my understanding that you have been working through your own legal representative with a Proofpoint legal representative since the end of June and that progress is being made to try to address and resolve your request. I also understand that there is another request related to obtaining reimbursement for seating in a right-hand aisle seat on airplanes when you are traveling for business and when you must pay a fee to obtain such seating that has been raised by your legal representative. To avoid duplicative efforts and confusion, you should continue working through both requests using the process your legal representative has been engaged in with Proofpoint's legal representative."

47.    In response, Mr. Heflin sent written correspondence to Mr. Devin on October 31, 2022

stating:

> Devin,
>
> We started the accommodation process on 4/29/2022. It is now 10/25/2022, and we have made no progress. I take from your email that Proofpoint will not start the interactive process because I filed two claims of retaliation against Proofpoint since we have not continued working through accommodations in several months.
>
> My legal representation was retained for the charges of retaliation and not to work accommodations required by law. My retention of counsel in no way should impede my request for accommodations, as they are two different issues. Even delaying because of mediation is inappropriate since mediation was for retaliation charges and not for accommodations.
>
> I elect to work directly with Proofpoint for my interactive process for accommodations. We still need to accommodate my medical needs, which Proofpoint has not addressed, as we discussed on 4/29.
>
> *Therefore, I have attached three documents for review.*

48.    The 'three documents' which were included with Mr. Heflin's October 31, 2022 email

to Devin Smith consisted of three separate letters, each dated November 1, 2022, requesting

accommodations related to three separate disabilities: Mr. Heflin's Gastrointestinal (IBS)

disability, his Orthopedic disability, and his Sleep Apnea and Chronic Fatigue disability.

49.    Mr. Heflin's November 1, 2022 letter to Proofpoint related to Mr. Heflin's orthopedic-

related disability, under the subject line '***Current Request For Reasonable Employment-***

*Related ADA Accommodation Due To  Orthopedic Disability*', states:

Dear Devin Smith,

Please accept this letter as my formal request, as a current Proofpoint employee, for an accommodation under the Americans with Disabilities Act, 42 U.S.C § 12101 (ADA) due to my current orthopedic disability. I have osteoarthritis in my left knee and spondylosis in my neck.  My disability prevents me from sitting for extended periods or in confined spaces as they cause excessive pain.

My requested accommodations due to the foregoing disabilities are:

(1)     Sitting in a right aisle seat when flying may require Proofpoint to pay for an upgraded ticket to provide adequate space and allow stretching of my knee.

(2)     Direct flights, when available (to allow for quicker travel times);

(3.)     a standing desk for the home to allow me to stand while working as needed.

See attached medical documentation regarding the above.

My claims vs. Proofpoint for retaliation related to prior accommodation requests remain pending with the EEOC.  I trust Proofpoint will address the current accommodation request outlined within this letter without regard to those pending EEOC cases, and do so directly with me, a current Proofpoint employee, notwithstanding the fact that I am represented bv counsel in the EEOC matters.

I also trust Proofpoint will not subject me to disparate treatment for having filed these prior claims – and working with legal counsel on those claims – by forcing me to wait to receive the currently requested accommodations outlined in this letter, or any active dialogue regarding these current accommodation requests – until my separate 'retaliation-based' EEOC claims are resolved, as recently suggested.

Rather, I look forward to engaging in a collaborative dialogue with Proofpoint in the near future to address the above – current –accommodation requests pursuant to  the ADA, beginning with your prompt written reply to this letter.

Thank you for your anticipated cooperation.

Sincerely,

Marc J. Heflin

50.    Mr. Heflin's November 1, 2022 letter to Proofpoint related to Mr. Heflin's sleep apnea

and chronic fatigue condition, under the subject line of *Current Request For Reasonable*

***Employment-Related ADA Accommodation Due To Sleep Apnea and Chronic Fatigue***",
stated:

> Dear Devin Smith,
>
> Please accept this letter as my formal request, as a current Proofpoint employee, for an accommodation under the Americans with Disabilities Act, 42 U.S.C § 12101 (ADA) due to my current sleep apnea and chronic fatigue disability.
>
> My requested accommodations due to the foregoing disabilities are:
>
> (1)     Travel during normal business hours (to minimize sleep disruption);
>
> (2)     Direct flights, when available (to minimize sleep disruption and due to chronic fatigue);
>
> (3.)    Single-occupant hotel accommodations when required to travel over-night (to facilitate use of my CPAP machine due to sleep apnea), and
>
> (4)     An 8-hour work day limit (due to chronic fatigue).
>
> See attached medical documentation regarding the above.
>
> My claims vs. Proofpoint for retaliation related to prior accommodation requests remain pending with the EEOC. I trust Proofpoint will address the current accommodation request outlined within this letter without regard to those pending EEOC cases, and do so directly with me, a current Proofpoint employee, notwithstanding the fact that I am represented bv counsel in the EEOC matters.
>
> I also trust Proofpoint will not subject me to disparate treatment for having filed these prior claims – and working with legal counsel on those claims – by forcing me to wait to receive the currently requested accommodations outlined in this letter, or any active dialogue regarding these current accommodation requests – until my separate 'retaliation-based' EEOC claims are resolved, as recently suggested.
>
> Rather, I look forward to engaging in a collaborative dialogue with Proofpoint in the near future to address the above–current –accommodation requests pursuant to the ADA, beginning with your prompt written reply to this letter.
>
> Thank you for your anticipated cooperation.
>
> Sincerely,
>
> Marc J. Heflin

51.     Mr. Heflin's November 1, 2022 letter to Proofpoint related to Mr. Heflin's gastrointestinal condition, under the subject line of **Current Request For Reasonable Employment-Related ADA Accommodation Due To Gastrointestinal Disability**", stated:

> Dear Devin Smith,
>
> Please accept this letter as my formal request, as a current Proofpoint employee, for an accommodation under the Americans with Disabilities Act, 42 U.S.C § 12101 (ADA) due to my gastrointestinal disability, as I have several gastrointestinal conditions which severely impact major life activities.
>
> My requested accommodations due to the foregoing disability are:
>
> Also, travel during normal business hours and direct flights to avoid extended periods where I have to go without eating or issues with access to a restroom. I am also requesting flexibility in scheduling meetings to support my disability.
>
> (1)     The option to drive during work-related travel to allow access to a restroom as needed;
>
> (2)     Travel during normal business hours and direct flights, when selecting the option to travel by air, to avoid extended periods where I have to go without eating or issues with access to a restroom; and
>
> (3)     Flexibility in scheduling meetings to accommodate my disability. See attached medical documentation regarding the above.
>
> My claims vs. Proofpoint for retaliation related to prior accommodation requests remain pending with the EEOC.  I trust Proofpoint will address the current accommodation request outlined within this letter without regard to those pending EEOC cases, and do so directly with me, a current Proofpoint employee, notwithstanding the fact that I am represented bv counsel in the EEOC matters.
>
> I also trust Proofpoint will not subject me to disparate treatment for having filed these prior claims – and working with legal counsel on those claims – by forcing me to wait to receive the currently requested accommodations outlined in this letter, or any active dialogue regarding these current accommodation requests – until my separate 'retaliation-based' EEOC claims are resolved, as recently suggested.
>
> Rather, I look forward to engaging in a collaborative dialogue with Proofpoint in the near future to address the above – current –accommodation requests pursuant to  the ADA, beginning with your prompt written reply to this letter.
>
> Thank you for your anticipated cooperation.

Sincerely,

Marc J. Heflin

52.     On November 11, 2022 Mr. Heflin sent an email to Devin Smith at Proofpoint regarding his November 2022 Accommodation Requests, which stated:

> Devin
>
> I wanted to follow up as it has been two weeks since I sent my request, and I have not had a response either verbally or in writing.

53.     Thereafter, Devin Smith sent an email to Mr. Heflin on November 15, 2023, which stated:

> Marc
>
> Thank you for your emails. I see you have included some old documentation, and there are also new requests presented in the letters you have attached that we have not yet seen. We will have to look over these and restart the interactive process.

54.     In response, Mr. Heflin sent Devin Smith an email later on November 15, 2023 which stated:

> Devin,
>
> Nothing is new [in] request. These are the same request I have been making for two years that have been ignored by Proofpoint. As you can tell by the dates of the documents, these are not new request.

55.     At no time did Proofpoint, through Devin Smith or otherwise, enter into a good-faith interactive process with Mr. Heflin regarding Mr. Heflin's November 2022 Accommodation Requests.

56.     Rather, Proofpoint, through Devein Smith, continued to present improper 'roadblocks' to having those conversations.

57.     On November 28, 2022 Devin Smith sent yet another form to Mr. Heflin for his doctor to complete, unnecessarily, as the prior doctor form that Mr. Heflin, related to permanent disabilities, was not 'too old' as Mr. Devin claimed, based on ADA-related regulations.

58.     In December, 2022, Mr. Heflin obtained and submitted to Devin Smith yet another completed doctor 'form'(the 'December 2022 Medical Form"), confirming Mr. Heflin's permanent impairment, as per the following excerpt: which stated, inter alia:

1.   Does the employee have a physical or mental impairment(s) that limits their ability to perform any of the essential functions of their position with the Company (as set forth in the attached job description)?

Yes __X__   No _____

If yes, is/are the impairment(s) temporary ____ or permanent _X_ ?

59.     The December 2022 Medical Form confirmed Mr.Heflin's IBS, Knee-Pain, and Sleep Apnea-related impairments, as documented in the following excerpt:

2.   If the employee is restricted in their ability to perform any of the essential functions of their job, describe the restrictions in detail, referencing the attached Job Description, including a description of how Marc Heflin is restricted with regard to the job function(s):

① Chronic neck and knee pain limit patient's ability to sit in small spaces such as airplane seats for extended periods of time

② Marc's IBS and chronic GI issues make it difficult again to spend long periods of time on flights due to unpredictable and often frequent need to use the restroom

Are these restrictions temporary _____ or permanent _X_ ?   ③ has sleep apnea, which can cause a lot of daytime fatigue if pt doesn't sleep well w/ CPAP machine

If temporary, when will the restrictions end, or when do you reasonably predict they will

60.     Thereafter, in December 2022, consistent with its conduct throughout Mr. Heflin's efforts to obtain an accommodation for his impairments, rather than engage in an interactive dialogue with Mr. Heflin, Proofpoint essentially 'dictated' the accommodations it would then offer (the "December 2022 Accommodations").

61.     The December 2022 Accommodations were inadequate and not acceptable to Mr.

Heflin, in part, as they continued to require that Mr. Heflin pay for any travel expenses related to having an aisle seat on work-related flights.

62.     Thereafter, after returning from vacation, Mr. Heflin advised his then boss, Andre Dominquez, that the December 2022 **Acco**mmodations were still not adequate. In response, Andre Dominquez stated he would work to get them fixed and to give him a week.

63.     Two weeks later, on January 20, 2023, upon again raising the subject again with his boss, Andre Dominquez admitted to Mr. Heflin that he hadn't done anything to follow up on Mr. Heflin's continued concerns about his accommodations.  He also then told Mr. Heflin, after learning that Mr. Heflin  then had another job offer, that  it would be best if Mr. Heflin left Proofpoint as Proofpoint had no plans to accommodate him.

64.     Mr. Heflin resigned his position of employment at Proofpoint on January 20, 2023.

65.     On January 26, 2023.Mr. Heflin filed Charge No. 556-2022-00859 with the EEOC (the '859 Charge).

66.     As alleged in the 859 Charge, Mr. Heflin was constructively discharged from his position of employment at Proofpoint by January 2, 2023.

67.     Mr. Heflin's constructive discharge by Proofpoint was due, *inter alia,* to:

    a.     Proofpoint's  acts and omissions with respect to Mr. Heflin's accommodation request, as outlined above;

    b.     Proofpoint's ongoing active discrimination against Mr. Heflin with respect to open positions at Proofpoint due to his disabilities, as outlined above; and

    c.     Proofpoint's ongoing retaliation against Mr. Heflin for having persisted in his efforts to obtain reasonable accommodations from Proofpoint, for his ADA protected

conduct, and for his having filed the 381 Charge and the 541 Charge with the EEOC.

68.     While employed at Proofpoint, Mr. Heflin applied for multiple open positions within Proofpoint that he was qualified for which would better accommodate his Impairment, as outlined in Paragraph 35, above (the "Open Positions")

69.     Although qualified to fill each of the Open Positions he applied for at Proofpoint, none of his applications resulted in an offer of employment from Proofpoint.

70.     At all times mentioned herein, before and after, the above-described perpetrators, including Julie Azzarello and Richard Gillies, were agents, servants, and employees of Proofpoint and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Proofpoint, thus making Proofpoint liable for said actions under the doctrine of *respondeat superior.*

### COUNT I

**Violation Under 42 U.S.C. §§ 12101 *et seq.*
Disability Discrimination—Failure to Accommodate
From and After February 2022 October 2022**

71.     Plaintiff restates and incorporates herein, by reference, all of the allegations within the above numbered paragraphs as though fully set forth herein,

72.     The ADA requires employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions. Reasonable accommodations must be made for otherwise qualified individuals who are actually disabled or have a record of impairment as per 29 C.F.R. § 1630.2(o)(4).

73.     At all times relevant, Plaintiff was a member of a protected class pursuant to the ADA because he had a physical or mental impairment that substantially limited one or more of his major life activities, including, but not limited to, performing manual tasks, eating, sleeping,

and standing, and working, related to his gastrological disability (IBS), his orthopedic disability (related to his left knee), and his sleep apnea/chronic fatigue related disability. (collectively, 'Mr. Heflin's Impairments").

74.     At all relevant times, Plaintiff was also a member of a protected class pursuant to the ADA because he had a record of Mr. Heflin's Impairments and was regarded by Proofpoint as having impairment that substantially limited one or more of his major life activities,

75.     At all relevant times, Defendant had actual knowledge of Mr. Heflin's Impairments. As Proofpoint was repeatedly notified by Plaintiff of Mr. Heflin's Impairments and Mr. Heflin's requested reasonable accommodations.

76.     At all relevant times, Plaintiff was a "qualified individual with a disability" under the ADA as he was able to perform the essential functions of his job at Proofpoint with or without reasonable accommodations.

77.     During all relevant times, Proofpoint failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

78.     During all relevant times, Proofpoint failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADA.

79.     The Plaintiff's requested accommodations for Impairments from and after February 2020 through October 2022, including his April 2022 Accommodation Requests, did not pose an undue financial or administrative burden or other undue hardship on Proofpoint.

80.     None of the accommodations requested by Plaintiff between from and after February 2020 through October 2022, including his April 2022 Accommodation Requests, would have caused other Proofpoint employees to work harder, longer, or be deprived of opportunities.

81.    Defendant failed to engage in an interactive process with Plaintiff regarding his accommodation request from and after February 2020 through October 2022, including his April 2022 Accommodation Requests, and denied reasonable accommodations then proposed by Mr. Heflin, outright, without any constructive interaction with Mr. Heflin about the accommodations.

82.    As shown by the foregoing, Plaintiff suffered intentional discrimination based on his disability.

83.    Proofpoint's failure to reasonably accommodate Mr. Heflin with regard to Mr. Heflin's Impairments, pursuant to his accommodation request from and after February 2020 through October 2022, including his April 2022 Accommodation Requests, violated the ADA provisions protecting individuals with disabilities against discrimination in the workplace.

84.    Due to the lack of reasonable accommodations for Mr. Heflin Impairments, from and after February 2020 through October 2022, Mr. Heflin had to, among other things, restrict his diet and not eat, with the hope of not having an IBS episode while working; endured frequent pain in his left knee while working and traveling, loss of sleep, and other injuries.

85.    By failing during all relevant times from and after February 2020 through October 2022 to take prompt and effective remedial action, Proofpoint in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

86.    As a direct and proximate result of Proofpoint's actions and/or omissions, as set forth in this Count I, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

87.    As a further direct and proximate result of Proofpoint's actions and/or omissions, as set forth in this Count I, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-

esteem in the form of garden variety emotional distress damages.

88.     During all relevant times, Proofpoint's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

89.     Pursuant to the provisions of the ADA, Plaintiff is also entitled to recover reasonable attorneys' fees from Proofpoint.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count I for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II

### Violation Under 42 U.S.C. §§ 12101 *et seq.*
### Disability Discrimination—Failure to Accommodate From and after November 2022

90.     Plaintiff restates and incorporates herein, by reference, all of the allegations within the above numbered paragraphs as though fully set forth herein,

91.     The Plaintiff's requested accommodations for Impairments from and after November 2022, including his November 2022 Accommodation Requests, did not pose an undue financial or administrative burden or other undue hardship on Proofpoint.

92.     None of the accommodations requested by Plaintiff from and after November 2022,

including his November 2022 Accommodation Requests, would have caused other Proofpoint employees to work harder, longer, or be deprived of opportunities.

93.    Defendant failed to engage in an interactive process with Plaintiff regarding from and after November 2022, including his November 2022 Accommodation Requests, and denied reasonable accommodations then proposed by Mr. Heflin, outright, without any constructive interaction with Mr. Heflin about the accommodations.

94.    As shown by the foregoing, Plaintiff suffered intentional discrimination based on his disability.

95.    Proofpoint's failure to reasonably accommodate Mr. Heflin from and after November 2022, including pursuant to his November 2022 Accommodation Requests, violated the ADA provisions protecting individuals with disabilities against discrimination in the workplace.

96.    Due to the lack of reasonable accommodations for Mr. Heflin Impairments, from and after November 2022, Mr. Heflin had to, among other things, restrict his diet and not eat, with the hope of not having an IBS episode while working; endured frequent pain in his left knee while working and traveling, loss of sleep, and other injuries.

97.    By failing during all relevant times from and after November 2022, including pursuant to Mr. Heflin's November 2022 Accommodation Requests, to take prompt and effective remedial action, Proofpoint in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

98.    As a direct and proximate result of Proofpoint's actions and/or omissions, as set forth in this Count II, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

99.    As a further direct and proximate result of Proofpoint's actions and/or omissions, as set

forth in this Count II, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress damages.

100.    During all relevant times, Proofpoint's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

101.    Pursuant to the provisions of the ADA, Plaintiff is also entitled to recover reasonable attorneys' fees from Proofpoint.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count II for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III

### Violation Under 42 U.S.C. §§ 12101 *et seq.*
### Disability Discrimination—Failure to Accommodate By Transferring to Open Positions

102.    Plaintiff restates and incorporates herein, by reference, all of the allegations within the above numbered paragraphs as though fully set forth herein,

103.    Based on ADA-related case-law, reassignment to a vacant position is a possible accommodation under the ADA, and in certain circumstances, reassignment to a vacant position may be a required reasonable accommodation.

104.     By not selecting Mr. Heflin for any of the Open Positions, Proofpoint failed to accommodate Mr. Heflin's Impairments in violation of the ADA.

105.     By not selecting Mr. Heflin for any of the Open Positions, Proofpoint violated the ADA provisions protecting individuals with disabilities against discrimination in the workplace.

106.     Upon information and belief, Proofpoint failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the ADA with respect to the transfer accommodation obligations of Proofpoint, in general, and specifically with respect to Mr. Heflin.

107.     By failing to take prompt and effective remedial action, with respect the transfer accommodation obligations of Proofpoint, Proofpoint in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

108.     Plaintiff suffered intentional discrimination based on Proofpoint having failed to comply with its transfer accommodation obligations under the ADA.

109.     As a direct and proximate result of Proofpoint's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress damages.

110.     As a further direct and proximate result of Proofpoint's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

111.     Proofpoint's conduct with respect to its transfer accommodation obligations to Mr. Heflin was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the

future.

112.    Pursuant to the provisions of the ADA, Plaintiff is also entitled to recover reasonable attorneys' fees from Proofpoint.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count III for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV

### Violation under 42 U.S.C. §§ 12101 *et seq.*

### Disability Discrimination—Disparate Treatment By Interfering with Job Transfer Efforts

113.    Plaintiff restates and incorporates herein, by reference, all of the allegations within the above numbered paragraphs. as though fully set forth herein,

114.    The Americans with Disabilities Act (ADA) prohibits employers from taking adverse actions against employees based upon their disability.

115.    The ADA provides, in relevant part, that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms and conditions of employment. 42 U.S.C. § 12112(a).

116.    The ADA prohibits treating a qualified individual with a disability differently because of

the disability, perceived disability, or records of a disability.

117.  Upon information and belief, in February 2022 Richard Gillies of Proofpoint actively interfered with Mr. Heflin being offered one or more of the Open Positions, by contacting the hiring manager for position earlier that month, even though Mr. Heflin was well qualified for the role and was then, he was told, about to be offered the position (the "Gillies Job Offer Interference Efforts")

118.  Upon information and belief, Mr. Heflin's disabilities stemming from Mr. Heflin's Impairments, and/or his protected conduct arising from his disabilities, to wit, seeking accommodations for his disabilities between February 2020 and January 2023, were determining factors motivating Proofpoint, through Richard Gillies, to engage in the Gillies Job Offer Interference Efforts.

119.  By engaging in the Gillies Job Offer Interference Efforts, through Richard Gillies, Proofpoint violated the ADA.

120.  At all times mentioned herein, Richard Gillies was acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Proofpoint, thus making Proofpoint liable for his Gillies' Job Offer Interference Efforts under the doctrine of *respondeat superior.*

121.  Proofpoint failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, in the manner set forth in this Count IV.

122.  As shown by the foregoing, Plaintiff suffered intentional discrimination based on his disability.

123.  As a direct and proximate result of Proofpoint's actions and/or omissions, as set forth in this Count IV, Plaintiff has been deprived of income as well as other monetary and non-

monetary benefits, including the loss of increased income that he would have received had he been selected for one or more of the Open Positions but for Mr. Gillies interference.

124.    As a further direct and proximate result of Proofpoint's actions and/or omissions, as set forth in this Count IV, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress damages.

125.    By failing to take prompt and effective remedial action, Proofpoint in effect condoned, ratified, and/or authorized the disability discrimination set forth in this Count IV against Plaintiff.

126.    Proofpoint's conduct with respect to this Count IV was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

127.    Pursuant to the provisions of the ADA, Plaintiff is entitled to recover reasonable attorneys' fees from Proofpoint.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count IV for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT V**

**Violation under 42 U.S.C. §§ 12101 *et seq.***

**Disability Discrimination—Disparate Treatment By Demanding Application Withdrawal**

128.   Plaintiff restates and incorporates herein, by reference, all of the allegations within the above numbered paragraphs. as though fully set forth herein,

129.   In February 2022 Richard Gillies of Proofpoint actively interfered with Mr. Heflin being offered one or more of the Open Positions at Proofpoint, by demanding that Mr. Heflin withdraw his application for employment by Proofpoint to till one or more of the Open Positions (the "Gillies Job Application Withdrawal Demands").

130.   Upon information and belief, Mr. Heflin's disabilities stemming from Mr. Heflin's Impairments, and/or his protected conduct arising from his disabilities, to wit, seeking accommodations for his disabilities between February 2020 and January 2023, were determining factors motivating Proofpoint, through Richard Gillies, to engage in the Gillies Job Application Withdrawal Demands.

131.   By engaging in conduct related to the Gillies Job Application Withdrawal Demands, through Richard Gillies, Proofpoint violated the ADA.

132.   At all times mentioned herein, Richard Gillies was acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Proofpoint, thus making Proofpoint liable for his Gillies' conduct related to the Gillies Job Application Withdrawal Demands under the doctrine of *respondeat superior.*

133.   Proofpoint failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, in the manner set forth in this Count V.

134.   As shown by the foregoing, Plaintiff suffered intentional discrimination based on his disability.

135.   As a direct and proximate result of Proofpoint's actions and/or omissions, as set forth in this Count V, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits, including the loss of increased income that he would have received had he been selected for one or more of the Open Positions but for Mr. Gillies interference.

136.   As a further direct and proximate result of Proofpoint's actions and/or omissions, as set forth in this Count V, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress damages.

137.   By failing to take prompt and effective remedial action, Proofpoint in effect condoned, ratified, and/or authorized the disability discrimination set forth in this Count V against Plaintiff.

138.   Proofpoint's conduct with respect to this Count V was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

139.   Pursuant to the provisions of the ADA, Plaintiff is entitled to recover reasonable attorneys' fees from Proofpoint.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count V for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VI

**Violation under 42 U.S.C. §§ 12101 *et seq.***

**Disability Discrimination—Disparate Treatment In The Open Positions Hiring Process**

140.   Plaintiff restates and incorporates herein, by reference, all of the allegations within the above numbered paragraphs. as though fully set forth herein,

141.   Upon information and belief, Mr. Heflin's disabilities and/or his protected conduct arising from his disabilities, to wit, seeking accommodations for his disabilities stemming from Mr. Heflin's Impairments, between February 2022 and January 2023, were determining factors in Proofpoint's not offering Mr. Heflin employment to fill one or more of the Open Positions.

142.   By engaging in the foregoing conduct with respect to Mr. Heflin's applications related to one or more of the Open Positions Proofpoint violated the ADA.

143.   At all times mentioned herein, before and after, the persons who made decisions with respect to Mr. Heflin's job applications related to the Open Positions were gents, servants, and employees of Proofpoint and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Proofpoint, thus making Proofpoint liable for said actions under the doctrine of *respondeat superior.*

144.   Proofpoint failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees in the manner set forth in this Count VI.

145.   As shown by the foregoing, Plaintiff suffered intentional discrimination based on his disability.

146.   As a direct and proximate result of Proofpoint's actions and/or omissions, with respect to

Mr. Heflin's applications Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

147.   As a further direct and proximate result of Proofpoint's actions and/or omissions, with respect to Mr. Heflin's job applications related to one or more of the Open Positions Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress damages.

148.   By failing to take prompt and effective remedial action, with respect to Mr. Heflin's job applications related to one or more of the Open Positions, Proofpoint in effect condoned, ratified, and/or authorized discrimination against Plaintiff.

149.   Proofpoint's conduct, with respect to one or more of Mr. Heflin's job applications related to the Open Positions, was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

150.   Pursuant to the provisions of the ADA, Plaintiff is entitled to recover reasonable attorneys' fees from Proofpoint.

   WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count VI for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VII

### Violation under 42 U.S.C. §§ 12203 *et seq.*
### Retaliation For Seeking Reasonable Accommodations

151.  Plaintiff re-alleges and incorporates herein, as though fully set forth herein, all of the above numbered paragraphs.

152.  42 U.S.C.§ 12203, titled, 'Prohibition against retaliation and coercion", provides in section (a) thereein:

> (a)  Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.act of requesting in good faith reasonable disability accommodation was protected activity for purposes of retaliation

153.  Mr. .Heflin's good-faith acts of requesting in good faith reasonable disability accommodations were protected activities for purposes of the prohibition against retaliation provided for in 42 U.S.C.§ 12203.

154.  Upon information and belief, Proofpoint retaliated against Mr. Heflin between February 2020 and January 2023 for Mr. Heflin having engaged in ADA-protected activity with respect to his accommodation requests in one or more of the following ways:

a.  by rejecting one or more of Mr. Heflin's accommodation requests;

b.  by  failing to engage in an interactive process with Mr. Heflin with respect to his accommodation requests from and after April 2022, due to his prior accommodation request;

c.  by  failing to engage in an interactive process with Mr. Heflin with respect to his accommodation requests from and after November 2022, due to his prior accommodation request;

d.    by rejecting one or more of Mr. Heflin's job applications for one or more of the Open Positions;

e.    by actively interfering in Mr. Heflin's efforts to be hired for one or more of the Open Positions, the Channel Sales Engineer position, through the conduct of Richard Gillies;

f.    by affirmatively demanding that Mr. Heflin withdraw one or more of his applications for Open Positions;

g.    by actively discouraging Mr. Heflin from applying for other jobs within Proofpoint to accommodate his disabilities; and

h.    by disparaging Mr. Heflin's reputation to other employees of Proofpoint

155.    Proofpoint's retaliatory conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count VII for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VIII
### Violation under 42 U.S.C. §§ 12203 *et seq.*

**Retaliation For Filing The '381 Charge' of Discrimination with the EEOC**

156.    Plaintiff re-alleges and incorporates herein, as though fully set forth herein, all of the above numbered paragraphs.

157.    Mr. Heflin's filing of the 381 Charge with the EEOC in February 2022 was a protected activity for purposes of the prohibition against retaliation provided for in 42 U.S.C.§ 12203.

158.    Upon information and belief, Proofpoint retaliated against Mr. Heflin between February 2022 and January 2023 for Mr. Heflin having engaged in ADA-protected activity in filing the 381 Charge with the EEOC in one or more of the following ways:

   a.    by rejecting one or more of Mr. Heflin's requested accommodation after the 381 Charge was filed with the EEOC;

   b.    by  failing to engage in an interactive process with Mr. Heflin with respect to his accommodation requests after the 381 Charge was filed with the EEOC;

   c.    by rejecting one or more of Mr. Heflin's job applications for one or more of the Open Positions after the 381 Charge was filed with the EEOC;

   d.    by actively interfering in Mr. Heflin's efforts to be hired for one or more of the Open Positions after the 381 Charge was filed with the EEOC including the Channel Sales Engineer position, through the conduct of Richard Gillies;

   e.    by affirmatively demanding that Mr. Heflin withdraw one or more of his applications for Open Positions, after the 381 Charge was filed with the EEOC;

   f.    by actively discouraging Mr. Heflin from applying for other jobs within Proofpoint to accommodate his disabilities; and

   g.    by disparaging Mr. Heflin's reputation to other employees of Proofpoint

159.   Proofpoint's retaliatory conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count VIII for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT X
**Violation under 42 U.S.C. §§ 12203 *et seq.***
**Retaliation For Filing The '541 Charge' of Discrimination with the EEOC**

160.   Plaintiff re-alleges and incorporates herein, as though fully set forth herein, all of the above numbered paragraphs.

161.   Mr. Heflin's filing of the 541 Charge with the EEOC in February 2022 was a protected activity for purposes of the prohibition against retaliation provided for in 42 U.S.C.§ 12203.

162.   Upon information and belief, Proofpoint retaliated against Mr. Heflin between May 2022 and January 2023 for Mr. Heflin having engaged in ADA-protected activity in filing the 381 Charge with the EEOC in one or more of the following ways:

a.   by rejecting one or more of Mr. Heflin's requested accommodation after the 541 Charge was filed with the EEOC;

b.     by  failing to engage in an interactive process with Mr. Heflin with respect to his accommodation requests after the 541 Charge was filed with the EEOC;

c.     by rejecting one or more of Mr. Heflin's job applications for one or more of the Open Positions after the 541 Charge was filed with the EEOC;

d.     by actively interfering in Mr. Heflin's efforts to be hired for one or more of the Open Positions after the 541 Charge was filed with the EEOC including the Channel Sales Engineer position, through the conduct of Richard Gillies;

e.     by affirmatively demanding that Mr. Heflin withdraw one or more of his applications for Open Positions, after the 541 Charge was filed with the EEOC;

f.     by actively discouraging Mr. Heflin from applying for other jobs within Proofpoint to accommodate his disabilities; and

g.     by disparaging Mr. Heflin's reputation to other employees of Proofpoint

163.  Proofpoint's retaliatory conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Proofpoint or to deter Proofpoint and other entities from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Proofpoint on this Count IX for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Mr. Heflin hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

**Respectfully submitted,**

<u>s/ Edward J. Rolwes</u>

Edward J. Rolwes (Mo. Bar No. 51522)
THE ROLWES LAW FIRM, LLC
2333 So. Hanley Rd., S. 104
St. Louis, MO  63144
314.806.9627 (voice)
314.472.0900 (fax)
erolwes@rolweslaw.com

*Attorney for Plaintiff*

## <u>DECLARATION AND VERIFICATION</u>

I, Marc Heflin, verify and declare that the facts stated in the forgoing Verified Complaint

for violation of the Americans with Disabilities Act are true to the best of my knowledge and

belief, and that the Complaint was not made out of levity or by collusion with Defendant, but in

sincerity and truth for the causes mentioned in the Complaint.



Marc Heflin


Date:   December 28, 2023